IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL S. COOPER, and          :
CHRISTINE L. COOPER t/d/b/a
SOUTH HANOVER AUTOMOTIVE LLC,   :
     Plaintiffs
                   :
     vs.                        CIVIL NO. 1:CV-11-0862
                   :

JOHN MENGES.                    :
JEFFREY GARVIK,
PENN TOWNSHIP,                  :
     Defendants


*M E M O R A N D U M*

I.   *Introduction*

      Plaintiffs are Michael S. Cooper ("Cooper" or "Plaintiff") and Christine L.

Cooper, t/d/b/a South Hanover Automotive LLC ("SHA").[1]  The defendants are Penn

Township; John Menges, Penn Township's zoning officer; and Jeffrey Garvik, Penn

Township's manager.  Plaintiff alleges that Defendants improperly imposed onerous

approval standards and procedural requirements on him when he sought to improve

SHA's premises.  He makes the following four claims: (1) a First Amendment retaliation

claim; (2) a substantive due process claim; (3) a procedural due process claim; and (4)

an equal-protection class-of-one claim.

      We are considering Defendants's motion for summary judgment.

---

    [1]  The case involves Michael S. Cooper's interaction with Defendants, so we will refer
only to him throughout this memorandum.

II.  *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  In deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Allegations made without evidentiary support may be disregarded, *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000), and "[c]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  *Meditz v. City of Newark,* 658 F.3d 364, 369 (3d Cir. 2011)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct.

2505, 2513, 91 L.Ed.2d 202 (1986)).  However, "[t]he non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).

With this understanding of the parties' respective evidentiary burdens, we set forth the factual background to this litigation, as supported by proper evidentiary submissions.[2]

III.  *Background*

SHA is an automotive repair service in Penn Township, Hanover, Pennsylvania, which Cooper started in November of 2007, (Doc. 43-3, Michael Cooper Dep. ECF p. 2).  Cooper purchased SHA's premises at about the same time.  (*Id.*, p. 3).  As acquired from the previous owner, the property was a "run down mess." (*Id.*).  It had blacktop and areas where stone had been put down, but grass was growing in the areas with stone and where the blacktop had broken apart, making those areas look simply like grass.  (*Id.*, ECF p. 3).  There were three buildings on the property: (1) a 30-by-30-foot building; (2) a small, 6-by-6-foot shed, described as "a small ticket booth style shed," attached to the front of the 30-by-30-foot building; and (3) a 20-by-40-foot shed (the 1200 square foot building or the storage/garage shed) at the rear of the property.  (*Id.*, ECF pp. 2, 3, 4, 11).  Cooper parked cars on the stone and blacktop

_____

[2]  In this regard, we note that Plaintiff objects to the validity of the affidavit of John Menges.  We have not relied on the Menges affidavit in deciding the summary judgment motion.

3

areas and used the 30-by-30-foot building as a garage bay to repair cars.  (*Id.*, ECF p. 3).  Shortly after acquiring the property, he took down the 6-by-6-foot shed, made physical improvements to the front office (located in the 30-by-30-foot building), removed the grass that had been pushing through the stone and blacktop areas, and blacktopped already existing blacktopped areas.  (*Id.*, ECF p. 5).

Defendant Menges is the Township zoning officer.  (Doc. 43-2, John C. Menges, II Dep., ECF p. 4).  Cooper first met him in August or September 2007, when Plaintiff was thinking about buying the property and being able to hook up to the sewer system.  (Doc. 43-3, Cooper Dep., ECF p. 6).  Cooper next met Menges around December 2007.  Menges was bringing his car into SHA for repairs, and Cooper asked him about his options for blacktopping the stone areas.  Menges told him he had to have a land development plan to blacktop those areas.  (*Id.*, ECF, p. 7).  Cooper had recently seen other commercial properties blacktopped and wondered if there was a way around having to do the land development plan.  (*Id.*)  Cooper did not want to spend the money for the plan, as most of his property was already stone and concrete.  (*Id.*, ECF p. 8).  When Cooper mentioned one of the other commercial properties, Menges became angry.  (*Id.*, ECF pp. 7-8).  Menges implied a plan was needed because the stone was "pervious."  (*Id.*, ECF pp. 8, 9).[3]  Plaintiff decided not to do a

---

[3] Another term the parties use is "impervious."  A pervious substance allows water to drain through it.  An impervious substance does not.  (Doc. 43-2, Menges Dep., ECF p. 6).

development plan because he wanted to make other improvements to the property and wanted to submit a plan listing all the improvements.

The Penn Township land-use ordinance requires a land development plan for any improvement to commercial property. (Doc. 43-8, Jeffrey R. Garvik Dep., ECF p. 7). However, an applicant can request that the requirement be waived. (*Id.*, ECF p. 27). The Penn Township Planning Commission makes recommendations to the Penn Township Board of Commissioners as to whether to approve a land development plan. (Doc. 38, Defs.' statement of material facts (DSMF) ¶ 10 and doc. 43, Pls.' counter-statement of material facts (CSMF) ¶ 10). The Township Board makes the final decision whether to exempt an applicant from the requirement of submitting a land development plan. (Doc. 38, Defs.' statement of material facts (DSMF) ¶ 11 and doc. 43, Pls.' CSMF ¶ 11; doc. 43-8 Garvik Dep., ECF p. 27). The Township Board is also the final authority on whether a plan is approved. (Doc. 43-8, Garvik Dep., ECF p. 8).

A request for a waiver is submitted in writing. (*Id.*, ECF p. 27). It goes through the Planning Commission and then through the Township Board. (*Id.*). The Board makes the decision. Sometimes it approves a waiver; other times it does not. (*Id.*, ECF p. 28). In Garvik's view, the key issue is whether the Township knows what is on the property, and a land development plan gives them a record of what is there. (*Id.*, ECF pp. 27, 28).

In April 2008, Plaintiff saw a newspaper article about improvements being made to the premises of T.L. Wetzel and Sons, Inc., a plumbing business. The article

mentioned that the owner had requested a waiver from having to file a land development plan, the first time Plaintiff was aware that a waiver could be sought. (Doc. 43-3, Cooper Dep., ECF pp. 9, 11; Doc. 43-9, newspaper article). He decided to seek a waiver for the improvements he wanted for his own property. (Doc. 43-3, ECF p. 11).

Cooper presented the waiver request himself. He sought the following: (1) a 400-square-foot bay attached to the end of the 30-by-30-foot building; (2) blacktop on the areas he wanted blacktopped; and (3) removal of the 1200-square-foot rear storage/garage shed, which was encroaching on the rear setbacks. (Doc. 43-3, Cooper Dep., ECF p. 11). He had seen that the Wetzel request for a waiver had gone through and thought he would have no problem. (*Id.*, ECF p. 12).

On October 2, 2008, Cooper made his presentation, a request for "exoneration" from having to file a land development plan, to the Planning Commission at the Commission's meeting. The minutes show the following:

> Michael Cooper represented this request. He presented his views on what he wants to do to the existing property at 848 Baltimore Street. He noted some buildings have already been removed. He would like to remove others and add on to some of the existing buildings. He will be removing more square footage that (sic) he is adding and will be removing the building situated along the alley. He would be adding flower gardens or stone parking in some areas. He stated that the property has been a car dealership since 1947 and has switched hands several times. He noted that almost the entire property has had stone and or concrete on it at some time. There was only a small strip of property that was not paved or concrete. Mr. Cooper also owns 852 Baltimore Street, which is a house.

6

Mr. Cooper stated that he is interested in putting in drain fields to control storm water. He has already made improvements to the alley to help alleviate some of the water problems.

Planners Van de Castle/Mummert moved for an unfavorable recommendation to the Penn Township Board of Commissioners on this request. Motion carried on a 6-0 vote.

(Doc. 38-4, Planning Commission minutes of October 2, 2008, ECF pp. 4-5). On October 21, 2008, Garvik sent a letter to Cooper, informing him that the Township Board had denied his request for a waiver and reading as follows:

The Penn Township Board of Commissioners, at its public meeting on October 20, 2008, denied your request dated August 7, 2008 for a waiver of the land development requirements to increase impervious area, as well as remove existing buildings and construct new buildings and to improve runoff issues. Improvements to the property as described in your letter will require the submission of a land development plan that meets the requirements of the Township's subdivision and land development ordinance.

(Doc. 38-5, ECF p. 2).

Cooper stated that several of the members of the Planning Commission talked to him about the recommendation that he be denied a waiver. One said "it was in [Plaintiff's] best interest to have a land development plan done" but did not say why. Another said that "they talked about it before the meeting and said that it wasn't in [his] best interest or that they thought it . . . wasn't a good idea for [him] to have an exemption, something of that nature." (Doc. 43-3, ECF p. 12).

Garvik testified that he believed the Township Board denied the waiver so that the Board would have a plan showing what was on the property since Plaintiff had admitted that he had taken down "buildings." (Doc. 43-8, Garvik Dep., ECF p. 27).[4]

Plaintiff put things on hold after the Township Board's decision. (Doc. 43-3, ECF p. 13). In the meantime, on April 2, 2008, the Planning Commission considered the Wetzel request for a waiver of a land development plan, mainly to construct a 30-by-40-foot building at its location on York Street. The Planning Commission voted 5-0 to recommend that the waiver be granted, and the Township Board granted the waiver. (Doc. 38-3, Planning Commission minutes, ECF p. 4); Doc. 38, DSMF ¶ 18 and doc. 43, Pls.' CSMF ¶ 18). Wetzel was represented before the Planning Commission by an attorney and did not increase the impervious area on its parcel. The new building did not include a second story. The Commission's recommendation was conditioned on the requirement that Wetzel supply the dimensions of the new building to the Township Board before the Board's meeting. (Doc. 38, DSMF ¶ 19 and doc. 43, Pls.' CSMF ¶ 19).

On May 7, 2009, A2Z Motor Sports LLC requested a waiver from the Planning Commission to build a 26-by-32-foot pole building. The Planning Commission voted 5-0 to recommend that the waiver be granted. (Doc. 38-6, Planning Commission minutes, ECF p. 3). The Township Board granted the waiver. (Doc. 38, DSMF ¶ 26

---

[4] Actually, as noted above, Plaintiff had taken down only one building, the small, 6-by-6-foot shed, described as "a small ticket booth style shed."

and doc. 43, Pls.' CSMF ¶ 26).  In the amended complaint, Plaintiff lists other individuals and business entities he alleges received waivers from the requirement of a land development plan.  (Doc. 18, Am. Compl. ¶ 20).  Plaintiff also supplies a list of such individuals and entities allegedly receiving such favorable treatment from February 2007 through August 2009.  (Doc. 43-9, Pls.' Ex. L).  Plaintiff believes they were treated more favorably "because a lot of them were big businesses, probably producing jobs, and some of them were friends."  (Doc. 43-3, Cooper Dep., ECF p. 21).

On May 5, 2009, Cooper called Penn Township to complain about dust blowing onto his property from construction taking place at the shopping center across the street.  The dust was covering his customer's cars, which had to be washed.  (Doc. 43-3 Cooper Dep., ECF pp. 13, 24).  Menges came out to SHA and went off on a tirade about Cooper having cars parked on the grass.  (*Id.*, p. 13).[5]  Plaintiff called the Township to complain, and spoke with defendant Garvik.  Garvik just laughed at him. (Doc. 43-3, Cooper Dep., ECF pp. 13, 24).[6]

After the Township Board denied his request for a waiver, Plaintiff decided to hire Hanover Land Services to submit a development plan.  (*Id.*, ECF p. 15).[7]  He

---

[5]  According to Menges, he did talk to Plaintiff about cars parked on the grass, a municipal violation, but the exchange was not heated.  (Doc. 43-2, Menges Dep., ECF p. 21).

[6]  Garvik does not remember the conversation.  His notes indicate that Plaintiff complained about not being treated the same as others and that Garvik said he would speak with Menges.  (Doc. 43-8, Garvik Dep., ECF p. 23).

[7]  In the meantime, as his business expanded, Plaintiff rented another property temporarily, which added to his expenses.  (Doc. 43-3 Cooper Dep., ECF pp. 18-19, 22).

worked with an employee of Hanover, Reginald Baugher, a professional land surveyor. (Doc. 33-5, Baugher Dep., ECF p. 3). Baugher prepared the plan. So that the plan would ultimately be approved, he applied for two variances from the Township Zoning Hearing Board, one for the rear setback and the other for a 35% expansion of a nonconforming use for an expansion of the impervious area.

On the latter variance, Baugher accepted Menges' interpretation of the zoning ordinance. (*Id.*, ECF pp. 8-9). Baugher disagreed with Menges' interpretation but believed it was easier to apply for a variance than challenge the zoning officer's position. (*Id.*, ECF p.9).[8] Menges acknowledged Baugher had asked him about the percentage of impervious area allowed for the lot but denied that he had advised him on how to proceed or had misled him about interpreting the ordinance. (Doc. 43-2, Menges Dep., ECF pp. 14-15). Cooper said that Baugher essentially told him that Menges "gave him the direction in which to go, he didn't want to buck what [Menges] said because he had to face [Menges] in the future on other cases but he didn't agree with [Menges'] plan." (Doc. 43-3 Cooper Dep., ECF p. 15).

According to Baugher, Cooper and Menges expressed displeasure with one another, (Doc. 43-5, Baugher Dep., ECF p. 13), and Menges believed that Cooper had unlawfully put gravel on the lot. (*Id.*, ECF p. 14). Both Cooper and Menges told Baugher that the other had shouted at him during their meetings. (Id., ECF pp. 14-15).

---

[8] According to Baugher, his disagreement with Menges arose from how to treat the rear shed. Baugher believed it should count as part of the business to determine the percentage of nonconforming use, but Menges believed it should not because it was not attached to the 30-by-30-foot building. (*Id.*, ECF p. 10).

On November 5, 2009, the Planning Commission considered the application for the variances. It recommended to the Zoning Board by a 5-to-1 vote that the variances should be granted. (Doc. 38-15, ECF pp. 2-3, Defs.' Ex. N, Commission minutes of Nov. 5, 2009). On November 10, 2009, the Zoning Hearing Board considered the application. (Doc. 38-7, ECF p. 2); Doc. 38, DSMF ¶ 28 and doc. 43, Pls.' CSMF ¶ 28). On December 8, 2009, the Zoning Hearing Board denied the application by a 3-to-1 vote. (Doc. 38, DSMF ¶ 29 and doc. 43, Pls.' CSMF ¶ 29).

Plaintiff did not appeal the Zoning Board's decision because he had hired an attorney who thought Baugher had improperly presented the application. The attorney "wrote it up in the exact opposite direction" from how Menges had "advised" Baugher. (Doc. 43-3 Cooper Dep., ECF p. 16). On July 1, 2010, the attorney submitted an application to the Planning Commission for a special exception to the Zoning Ordinance, not for a variance, to replace an existing shed with an addition that encroached into rear setbacks. (Doc. 38, DSMF ¶ 30 and doc. 43, Pls.' CSMF ¶ 30); Doc. 38-9, Defs.' Ex. H, Penn Township Planning Commission Meeting Minutes, July 1, 2010, ECF p. 2). According to the minutes, the Commission recommended denial of the application by a 3-to-3 vote. On July 13, 2010, the Penn Township Zoning Hearing Board granted the special exception. (Doc. 38, DSMF ¶ 31 and doc. 43, Pls.' CSMF ¶ 31); Doc. 38-10, Defs.' Ex. I, Penn Township Zoning Hearing Board Meeting Minutes, July 13, 2010, ECF p. 3). After the Zoning Hearing Board granted the special exception, Plaintiff was able to make his improvements to SHA's premises. (Doc. 43-3,

Cooper Dep., ECF p. 18).  Baugher said that the time and expense that Plaintiff went

through was typical for the process.  (Doc. 43-5, Baugher Dep., ECF p. 11).

VI.   *Discussion*

    A.  *The First Amendment Retaliation Claim*

       To establish a First Amendment retaliation claim, a plaintiff must show: (1)

that he "engaged in a protected activity, (2) that defendants' retaliatory action was

sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3)

that there was a causal connection between the protected activity and the retaliatory

action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an

unusually suggestive temporal proximity between the protected activity and the

allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to

establish a causal link.  [citations omitted]  In the absence of that proof the plaintiff must

show that from the 'evidence gleaned from the record as a whole' the trier of the fact

should infer causation. [quoted case omitted]." *Id.* (brackets added).  The defendant

must know about the protected activity for there to be a causal connection between that

activity and the retaliatory conduct.  *Gorum v. Sessoms*, 561 F.3d 179, 188 (3d Cir.

2009).

       Defendants move for summary judgment on the First Amendment

retaliation claim in part by arguing that there is no evidence that either the Planning

Commission or the Township Board acted in response to any protected activity by Plaintiff, meaning that Plaintiff cannot establish a causal link between the conduct of the Commission and Board or any First Amendment conduct by Plaintiff.

In opposition, Plaintiff argues the evidence supports a retaliation claim. As we understand the argument, he identifies two protected activities: (1) his "vigorous defense (sic) of the intentional and outrageous requirements" imposed on him but not on others seeking waivers from the requirement of filing a land development plan (Doc. 44, Opp'n Br. at p. 16); and (2) his complaint to the Township when he spoke to defendant Garvik about Menges' hostility on May 5, 2009, after Cooper called the Township to complain about the dust blowing onto his property. (*Id.*, p. 17). Plaintiff identifies the retaliatory conduct as the unfavorable treatment he received compared to others similarly situated. To establish the causal link, Plaintiff apparently relies on a pattern of antagonism supposedly shown by what he calls being "subjected to various municipal hearings and procedures" that others did not have to go through. (*Id.*, p. 16).

As the record shows, Plaintiff went through three proceedings before he gained approval for the improvements he wanted to make to his property. The first one was the waiver request he presented himself which was unsuccessful before both the Planning Commission and the Township Board in October 2008. We fail to see how the circumstances of this request supports a retaliation claim. First, the Commission and Board acted before there could have been any protected activity. This was the first attempt Plaintiff made to obtain approval for the changes he wanted to make to his

property, so the governmental conduct could not be part of a retaliatory pattern for Plaintiff's "defense" against the stricter requirement imposed on him. Further, there is no reason why the Commission or Board would retaliate for the simple act of requesting a waiver. Additionally, Plaintiff's complaint to Garvik occurred in May 2009, so the earlier decisions in October 2008 of the Commission and Board could not have been in retaliation for that activity either. *See Miller v. Mitchell*, 598 F.3d 139, 148 (3d Cir. 2010)(a threat of criminal prosecution before the plaintiff engages in protected activity cannot be the basis of a retaliation claim).

Plaintiff's second proceeding was the application Reginald Baugher made on his behalf for a variance, which the Planning Commission recommended in November 2009 should be granted but which the Zoning Hearing Board denied in December 2009. The second proceeding does not support a retaliation claim. First, while the denial occurred after Plaintiff's complaint to Garvik, Plaintiff has produced no evidence that the members of the Planning Commission (which recommended the application be granted, in any event), or the Zoning Board knew about it. *See Gorum*, *supra*, 516 F.3d at 188 (the defendant must know about the protected activity for there to be a causal connection between that activity and the retaliatory conduct).

Plaintiff asserts that a causal link is established because the handling of his applications was stricter than those of others similarly situated. In support, Plaintiff points to two other businesses, T.L. Wetzel and Sons, Inc. and A2Z Motor Sports LLC. Both businesses were granted waivers from having to file a land development plan.

Plaintiff asserts they were similarly situated because they were all making a request for the same type of changes, a change to an impervious area or to put up a structure. We do not think this is sufficient to show the businesses were similarly situated. The premises differed in other respects, and it is common for property owners to seek changes like alterations to impervious areas or to put up a structure.

Plaintiff also supplies a list of other individuals and entities allegedly receiving more favorable treatment from February 2007 through August 2009. (Doc. 43-9, Pls.' Ex. L). This is merely a list of those who received waivers of the requirement to file a land development plan. The list does not show us that why Plaintiff's treatment was less favorable. Moreover, Plaintiff believed they (including Wetzel and A2Z) were treated more favorably "because a lot of them were big businesses, probably producing jobs, and some of them were friends." (Doc. 43-3, Cooper Dep., ECF p. 21). So even if they had been treated more favorably, it was not in retaliation for Plaintiff's exercise of his First Amendment rights.

On this aspect of the claim, we note that Plaintiff asserts that Menges acted intentionally in somehow pressuring Baugher to accept his interpretation of the zoning ordinance, supposedly resulting in denial of the variance application. The record does not support this assertion. Baugher went along with Menges' interpretation simply as a matter of strategy. Baugher could have gone another way if he had wanted to.

Plaintiff's third proceeding was a counseled application for a special exception to the Zoning Ordinance. While the Planning Commission recommended on

July 13, 2010, denial of the application by a 3-to-3 vote, the Penn Township Zoning

Hearing Board granted the special exception, allowing Plaintiff to make the desired

changes to his property.

For the reasons we gave for rejecting a retaliation claim on the basis of

the second proceedings, we also find any retaliation claim based on the third

proceedings deficient.

B.  *The Substantive Due Process Claim*

A substantive due process claim requires the plaintiff to show that the

government official's conduct shocks the conscience.  *Eichenlaub v. Twp. of Indiana*,

385 F.3d 274, 285 (3d Cir. 2004).  This standard "is not precise" and "varies depending

on the factual context."  *Id.* (internal quotation marks and quoted cases omitted).  Only

the most egregious official conduct shocks the conscience.  *Id.* (internal quotation

marks and quoted cases omitted).  The test would be satisfied by evidence of

"corruption, self-dealing, bias against an ethnic group, or additional facts that suggested

conscience-shocking behavior."  *Chainey v. Street*, 523 F.3d 200, 219-220 (3d Cir.

2008)(citing *Eichenlaub*).  In the context of land-use decisions, the shocks-the-

conscience test assists the court in not "being cast in the role of a 'zoning board of

appeals.'"  *Id.* at 219-220 (quoted case omitted).  Hence it is not sufficient merely to

show that a government official had an "improper motive," "even where the motive is

unrelated to the merits of the underlying decision."  *Id.* at 220.  Nor is it sufficient to

assert some claim of abuse of legal authority, such as bad faith in the enforcement of

land-use rules, *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 257 (3d Cir. 2010)(nonprecedential)(citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003)), or that standards applied to the plaintiff were not applied to similar properties. *Chainey*, 523 F.3d at 220; *Highway Materials*, 386 F. App'x at 257-58.

In moving for summary judgment on the substantive due process claim, Defendants argue there is no evidence that any of their conduct shocks the conscience. Instead, the evidence only shows that Plaintiff disagrees with the Township Board's decision not to waive the requirement of a land development plan and with the Zoning Hearing Board's decision not to grant the application submitted by Baugher for a variance. Defendants also note that Plaintiff received approval for altering SHA's premises after he "properly" filed an application for a special exception.

In opposition, Plaintiff argues that his evidence shows conscience-shocking behavior. We disagree. We concur with Defendants' assessment of the evidence. We add that, even if Plaintiff had been treated less favorably than similarly situated property owners, that is not enough to establish a substantive due process claim.

C. *The Equal-Protection Class-of-One Claim*

Plaintiff's equal protection claim does not allege class-based animus. It is instead a class-of-one claim. An equal protection claim can be brought by a "'class of one'" when "the plaintiff alleges that [he] has been intentionally treated differently from

17

others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). The rational basis test applies to a class-of-one claim. *Russell v. City of Philadelphia*, 428 F. App'x 174, 177 n.2 (3d Cir. 2011) (nonprecedential); *Highway Materials*, *supra*, 386 F. App'x at 259. Under the rational basis test, a class-of-one claim "fail[s] when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Highway Materials*, 386 F. App'x at 259 (quoting *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).

Plaintiff's equal protection claim is based on the assertion that other business entities listed in his Exhibit L were treated more favorably than Plaintiff, specifically, that they were granted prompt waivers and exemptions to improve their properties while Plaintiff had to go through a two-year process. In moving for summary judgment on this claim, Defendants argue that there is no evidence that others were treated more favorably and that it was rational to require Plaintiff to file a land development plan because Plaintiff had altered the property and the Township could validly request a plan in those circumstances.

We agree with Defendants that Plaintiff has failed to establish a class-of-one claim. Plaintiff was not put through a two-year process by Defendants. He made the decision to proceed as he did, beginning with his pro se request for a waiver. Garvik's testimony that the Township would want a plan to establish a record of what

18

was on his property provides a rational basis for the Township Board's denial of that request. Additionally, Plaintiff has provided no reason why the Zoning Hearing Board's decision to deny the application for a variance (prepared by Baugher) was arbitrary. We recognize that Plaintiff asserts that Menges intimidated Baugher into presenting the application under Menges' interpretation of the zoning ordinance, but we have already rejected that position. Finally, we note that Plaintiff's third attempt, his counseled application for a special exception, was granted.

D. *The Procedural Due Process Claim*

Plaintiff's procedural due process claim is based solely on the position that the Township decision-makers were biased when making their adverse decisions against him. In moving for summary judgment on this claim, Defendants argue that it fails because Plaintiff had available to him avenues of judicial review for any adverse decisions.

We agree with Defendants. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.* A claim that a decision-maker was biased does not relieve a plaintiff from having to pursue available avenues of relief. *Id.* at 118-19.

In the instant case, it appears that Plaintiff could have appealed the Township Board's decision denying him a waiver from the requirement of filing a land development plan to the court of common pleas. *See* 2 Pa. Con. Stat. Ann. § 752; 42 Pa. Con. Stat. Ann. § 933(a)(2), and 2 Pa. Con. Stat. Ann. § 101. Additionally, he could have appealed the Zoning Hearing Board's denial of his application for a variance to the court of common pleas. *See* 53 Pa. Stat. Ann. § 11002-A.

Based on the foregoing, we will enter summary judgment in favor of Defendants and against Plaintiffs.[9]

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge

Date: January 7, 2013

---

[9] We note that Menges and Garvik also moved for summary judgment on the basis that they lacked personal involvement in the conduct alleged to have violated Plaintiff's constitutional rights. See *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(personal involvement in the alleged wrongs is necessary for the imposition of liability in a civil rights action). We agree that at least as to Garvik this argument is an additional reason why he is entitled to summary judgment, as Plaintiff's evidence would only establish at best that Garvik's conduct consisted solely of laughing at Plaintiff when Plaintiff called to complain about Menges' attitude on May 5, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MICHAEL S. COOPER, and          :
CHRISTINE L. COOPER t/d/b/a
SOUTH HANOVER AUTOMOTIVE LLC,   :
        Plaintiffs
                             :

        vs.                   CIVIL NO. 1:CV-11-0862
                             :

JOHN MENGES.                    :
JEFFREY GARVIK,
PENN TOWNSHIP,                  :
        Defendants


*O R D E R*

AND NOW, this 7th day of January, 2013, it is ordered that:

  1.  Defendants' motion (Doc. 37) for summary judgment is granted.

  2.  The Clerk of Court shall enter judgment in favor of the defendants and against the plaintiffs and close this file.


                  /s/William W. Caldwell
                  William W. Caldwell
                  United States District Judge